UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JOHN HUNTER, SR.,                    NO. 18-cv-1773 (ECT/DTS)

      Petitioner,

v.                                   **REPORT AND RECOMMENDATION**

M. RIOS,
*Warden, FPC-Duluth*,

      Respondent.

---

John Hunter, Sr., Federal Prison Camp—Duluth, PO Box 1000, Duluth, Minnesota 55814, *pro se* Petitioner.

Bahram Samie, US Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Respondent.

---

## INTRODUCTION

Petitioner John Hunter, Sr., an inmate at FPC-Duluth, seeks a Writ of Habeas Corpus from this Court reinstating 41 days of good conduct time he lost following a disciplinary hearing. At the hearing, a Disciplinary Hearing Officer (DHO) concluded that Hunter had violated prison rules by possessing a cellphone. In his Petition, Hunter contends he was denied adequate due process before being deprived of the good time credit. Upon review, the Court is satisfied that Hunter received adequate due process, and so recommends that Hunter's petition be denied.

**FINDINGS OF FACT**

On April 13, 2017, a cellphone[1] was discovered in vegetation near the Visiting Road of the Federal Prison Camp in Duluth, Minnesota (FPC-Duluth). Decl. of Mark DeLoia Ex. D[2] at 1, 6, Docket No. 7-1. The area where the phone was found is "accessible to inmates, even if they would be out of bounds." *Id.* at ¶ 19. The phone was sent to the Bureau of Prisons Forensic Lab for analysis. *Id.* at ¶ 9, Ex D at 5. FPC-Duluth officials subsequently received the results of that analysis, including a call log. *Id.* at Ex. D at 7-8. The investigating officer identified the phone number for an outgoing call on April 12, 2017, as belonging to Hunter's parent or parents. *Id.* at Ex. D at 1, 8-10. The number was unique to Hunter's prison phone account. *Id.* at Ex. D at 1. From this, the officer drafted an incident report charging Hunter with possession of a portable telephone, which prison policy considers a hazardous tool. *Id.* at Ex. D at 1, Ex. A (Inmate Discipline Program) at 44.

On the evening of September 19, 2017, Hunter received the incident report charging him with possessing the cellphone. *Id.* at Ex. D at 1-2. The report contained the following description of the incident:

> On September 19, 2017, an SIS review of BOP Forensic Lab Extraction Report conducted on an Alcatel model 4060A cellular phone, IMEI: 014699005810190, with an AT&T sim card 89014103279161986817, was recovered on April 13, 2017 at 9:30 pm, near the FPC Duluth Visiting Road,

---

[1] Specifically, the cellphone was an Alcatel model 4060A, with International Mobile Equipment Identity (IMEI) number 014699005810190 and an AT&T SIM card with serial number 89014103279161986817. DeLoia Decl. Ex. D at 1.

[2] Exhibit D of Mark DeLoia's declaration is the incident report, Unit Discipline Committee action, and the summary of the investigation with supporting documents. Because there is no consistent pagination of the documents, all pin cites reference the page of the document within the full exhibit.

south of the Visiting Center Parking lot. During the review, I discovered seven phone numbers unique only to Hunter, John, Reg. No. 18434-041, active TRUPHONE account, this numbers [sic] appear on the phone log for April 12, 2017. The report showed that the cell phone was used to place a call to [the phone number associated with Hunter's account].

*Id.* at Ex. D at 1. Hunter was also informed of his right to remain silent through the disciplinary proceedings. *Id.* at Ex. D at 2. The report states that, after being advised of his right to remain silent, Hunter told the investigating officer that he never used the phone himself, but asked a friend to make a call for him, and acknowledged that the phone number belonged to his father. *Id.* at Ex. D at 2.

The next day, a Unit Discipline Committee[3] conducted an initial hearing of the charge. *Id.* at Ex. D at 1. At the hearing, Hunter stated that he wanted "the full report." *Id.* Because of the nature of the charge, the Committee referred the report to a Discipline Hearing Officer.[4] *Id.* at Ex. D at 1, Ex. A at 23, 44. Hunter was informed of and acknowledged his rights for the DHO hearing. Pet. Ex. B, Docket No. 1-1. He requested to have Ms. Olson, an education technician, as his staff representative for the hearing, but did not request any witnesses be called. Pet. Ex. C; DeLoia Decl. ¶ 11.

The DHO hearing took place the following week. Before the hearing, Hunter learned that his selected staff representative would not be at FPC-Duluth on the day of hearing. DeLoia Decl. ¶ 13; Pet. Ex. D at 1. The DHO Report indicates Hunter waived his

---

[3] A Unit Discipline Committee generally consists of two or more staff members, not significantly involved in the incident or investigation, who review the incident report. The Committee may dispose of certain charges itself, or, depending on the seriousness of the charge, refer the incident report to a Discipline Hearing Officer. DeLoia Decl. Ex. A at 23.

[4] A Disciplinary Hearing Officer is an independent officer, trained and certified by the Bureau of Prisons, who conducts hearings for incidents referred by a Unit Discipline Committee. DeLoia Decl. Ex. A at 27.

right to a staff representative at the outset of the hearing. Pet. Ex. D at 1. Besides not calling witnesses, Hunter presented no documentary evidence. *Id.* at Ex. D at 2. He did make a statement during the hearing, which the DHO summarized as follows:

> My dad got hurt. I gave the number to another inmate. His name was chief, but he is no longer here. He called my dad [sic] I was standing right there in the phone room and I never used the cell phone. I never told anyone to use a cellphone.

*Id.* at Ex. D at 1.

The DHO found that Hunter had committed the charged offense of possessing a cellphone. In his report, the DHO listed the evidence he believed supported his finding. *Id.* at Ex. D at 2. This included the investigating officer's summary in the incident report, the forensic documents from Forensic Lab, printouts of Hunter's prison telephone account,[5] and the investigator's summary of Hunter's statement when given the incident report. *Id.* The DHO stated that he considered Hunter's denial of ever actually using the phone, but did not credit it because Hunter could not provide any corroborating evidence, including the actual name of the prisoner he only knew as "Chief." *Id.* The DHO's list of specific evidence contained two statements attributed to Hunter that apparently were made by other inmates during hearings held the same day. *Id.*; DeLoia Decl. ¶ 20. Based on his determination that Hunter committed a prohibited act, the DHO sanctioned Hunter by deducting 41 days of his earned good conduct time, as well as imposing a 120-day loss of certain privileges. Pet. Ex. D at 2. Hunter filed an administrative appeal of the DHO's decision, but it was denied. Pet. 2-3.

---

[5] The DHO report refers to the printouts as being from Hunter's "Truview" account, which presumable is the software program. Mark DeLoia states that the printouts were from Hunter's telephone account. DeLoia Decl. ¶¶ 9, 16.

## CONCLUSIONS OF LAW

In this habeas petition under 28 U.S.C. § 2241, Hunter challenges the adequacy of the due process he received at the DHO hearing. Fairly construing Hunter's Petition and supporting memoranda, he argues his rights were violated because (1) he was never provided a full version of the investigator's report after he requested it, (2) he was denied a staff representative, (3) the DHO Report contained several false or inaccurate statements attributed to him, and (4) the evidence was otherwise not sufficient to find he committed the charged offense. None of these alleged affronts resulted in the violation of Hunter's constitutional due process rights.

## I. Legal Standard

As a governmental entity, the Bureau of Prisons may not deprive an individual "of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has recognized a prisoner's statutorily created liberty interest in good conduct time, which may shorten a term of imprisonment. *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). Although not entitled to "the full panoply of rights due to a defendant" in a criminal prosecution, *id.* at 555, an inmate subject to prison disciplinary proceedings must receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Further, to survive a constitutional challenge, the outcome of the disciplinary proceedings must be supported by "some evidence in the record." *Id.*

An inmate seeking restoration of good conduct time is effectively contesting the duration of his confinement, and so properly brings such a challenge in a habeas corpus proceeding. *Stone v. Norris*, 230 F.3d 1364  (8th Cir. 2000) (Table) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)). In reviewing the petition, a court must remember that it is "not part of the appellate process for prison disciplinary proceedings[,]" and is not responsible for ensuring that a prison's self-imposed procedures were followed. *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985). Rather, the court's review is circumscribed to constitutional infringements. *Id.*

## II.    Evidentiary Hearing

As an initial matter, the Court finds it unnecessary to hold an evidentiary hearing on Hunter's Petition. "Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition alleges sufficient grounds for release, relevant facts are in dispute, and the [prior adjudicative body] did not hold a full and fair evidentiary hearing," *Toney v. Gammon*, 79 F.3d 693, 697 (8th Cir. 1996) (quotations omitted). However, no hearing is necessary "where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record." *Wallace v. Lockhart*, 701 F.2d 719, 730 (8th Cir. 1983). As demonstrated below, even assuming Hunter's version of events where dispute of the facts exists, he fails to state a cognizable constitutional claim.

## III.    Hunter's Procedural Due Process Rights

### A.    The investigator's report

6

Hunter contends his due process rights were violated because he did not receive a copy of the full investigative report after he requested it.[6] He provides two, somewhat overlapping, theories as to why this conduct violates his constitutional rights. First, he apparently suggests that the incident report he received was, by itself, insufficient notice of the charge against him. Second, he contends that by not receiving a copy of the investigator's report, he was denied a real opportunity to call witnesses and present documentary evidence in his defense.

### 1. Notice

*Wolff*'s mandate that an inmate receive advance written notice of a charge provides the accused with an opportunity to "marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "[T]he notice should spell out 'more than a conclusory charge: an inmate must receive notice of at least some specific facts underlying the accusation.'" *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007) (quoting *Sira v. Morton*, 380 F.3d 57, 70 (2d Cir. 2004)). It should provide, if known, "general information about the date, place, and nature of the alleged misconduct." *Id.*

The incident report Hunter received on September 19 provided sufficient notice of the charge against him. The report stated the sole charge of possessing a cellphone. It alerted him to the critical facts and evidence: the phone was found, a subsequent forensic examination revealed outgoing calls on a specific date and time to a specific number, and the number was unique to Hunter's phone account. With this information, Hunter was in a position to "marshal the facts and prepare a defense." For instance, he knew the evidence against him was circumstantial. He could, if he had one, present an alibi defense

---

[6] This allegation is undisputed in the record.

for the date and time the conduct allegedly occurred, or otherwise challenge his association with the specific phone number.

The incident report's summary did not otherwise omit important information known only to the investigator, such as the existence of a witness or where Hunter allegedly possessed the cellphone. There was no witness besides the cellphone, and the investigator had no idea where the alleged events occurred. For these reasons, the Court is satisfied that Hunter did not need the full investigative report to receive adequate written notice of the charge against him.

### *2.* **Presentation of a defense**

Hunter also argues that he needed the complete investigator's report to present his defense and, by not providing the file to him after he requested it, the BOP constructively denied him the right to present a defense, even if he was technically free to call witnesses or submit documents. This argument invites the Court to consider the scope of Hunter's right, recognized in *Wolff*, to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. There is disagreement among the various circuits as to the precise scope of this right and *Wolff* itself provides little guidance. Still, this Court is satisfied that Hunter's right to present a defense was not violated by not receiving the full investigative report.

The *Wolff* Court does not address the question of whether the right, within limits, to present witnesses and documentary evidence in a disciplinary hearing entails a right to view or otherwise obtain the evidence to be presented. Rather, its discussion of an inmate's qualified right to present a defense focuses exclusively on institutional safety

and the need of prison officials to limit inmate contact and to keep a hearing within a reasonable amount of time. *Id.* Nor can this Court confidently draw an inference from *Wolff.* On one hand, The Court in *Wolff* was clear that prison officials retain broad discretion in conducting disciplinary hearings. *Id.* at 566. On the other hand, that same Court noted that the right to present a defense could not be absolute, among other reasons, because prison officials must have the discretion "to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* at 566. Such language implies that a right to obtain evidence is part and parcel to the right to present a defense, and so prison officials may not deny an inmate access to documents, at least not arbitrarily. *Cf. Ponte v. Real*, 471 U.S. 491, 497 (1985) (holding that "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify").

Lower courts following *Wolff* provide limited guidance. The Eighth Circuit, whose decisions bind this Court, seemingly has never addressed documentary evidence in prison disciplinary hearings. The Third Circuit has held that, subject to the normal qualifications, prison officials violate *Wolff* when they refuse to produce documents in their possession at the disciplinary hearing upon the inmate's request. *See Young v. Kann*, 926 F.2d 1396, 1402 (2d Cir. 1991) (inmate demanded that his confiscated letter be produced and made part of the hearing record). But the right to demand officials produce at the hearing records in their possession is not at issue here. The investigative report was in fact produced at the hearing—and the DHO relied upon it. The Tenth Circuit, when faced with the question of whether an inmate had a right to review the videotape of an altercation he allegedly participated in, sidestepped the question of *when* the inmate could

obtain such information, ruling that a summary of the videotape was sufficient given institutional safety concerns. *See Bogue v. Vaughn*, 439 F. App'x 700, 704-06 (10th Cir. 2011).

The Seventh Circuit appears to have most directly—and persuasively—answered the question posed by Hunter's pre-hearing request for the full investigative report. That court has applied a *Brady*-type rule requiring the disclosure of exculpatory evidence, including investigative reports, to prison disciplinary hearings. *Chavis v. Rowe*, 643 F.2d 1281, 1285-87 (7th Cir. 1981). However, it has noted that, since criminal defendants lack a constitutional right to discovery, it seems implausible that inmates in disciplinary hearings, where the "full panoply of rights" do not apply, would possess such a right. *Shroyer v. Cotton*, 80 F. App'x 481, 484-85 (7th Cir. 2003) (inmate did not have right to examine visiting room log book to find potential witnesses); *see also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one . . . ."). This Court finds the Seventh Circuit's reasoning persuasive. Whatever right Hunter may have to present evidence during the disciplinary hearing, it does not follow that this creates a right to compel discovery from prison officials for use in mounting a defense.

Even if Hunter had a procedural right to the investigative report which was violated here, he has not demonstrated prejudice. When challenging the process provided in a prison disciplinary hearing, "a habeas petitioner needs to demonstrate that he was harmed by the [due process] violation in order to obtain relief." *Adams v. Fed. Bureau of Prisons*, 2011 WL 1793381, at *2 (D. Minn. Dec. 6, 2011) (collecting cases); *Griffin-Bey v. Bowersox*, 978 F.2d 455, 456 (8th Cir. 1992) (affirming summary judgment for

defendants on § 1983 claim, in part, because plaintiff did not assert that cure of the alleged procedural defect "would have resulted in a different outcome at the disciplinary hearing"). The only prejudice Hunter alleges here is that the investigator's report falsely reports a statement from him to the investigator and that, had he known of this in advance, he would have called the investigator to challenge the statement. However, *Wolff* explicitly held that an inmate does not have the right to confrontation or cross-examination of adverse witnesses, 418 U.S. at 567, and the Eighth Circuit has not ruled otherwise. So, Hunter could not have made the investigator testify just to impeach him. Hunter was still free to make a statement in his own defense at the hearing, which he did,[7] but there is nothing to indicate that the result of the hearing would be different had Hunter had the full investigator's report before the hearing.

For these reasons, Hunter has not shown his due process rights were violated because he was not given the investigator's report before the disciplinary hearing.

### B.    Staff representative

Relying upon Bureau of Prisons policy, Hunter also argues that he was denied his right to counsel substitute in the form of a staff representative. This argument is without merit. Although prison policy may provide an inmate with a right to a staff representative during disciplinary proceedings, constitutional due process does not require it unless an inmate is illiterate, or the complexity of the issues is especially great. *Wolff*, 418 U.S. at 570. And this Court is not responsible for enforcing a prison's self-imposed procedures.

---

[7] Confusingly, Hunter quotes the statement from the investigator's report twice: once to claim it was "entirely false," and then to claim that it was the truth. Pet'r's Mem. of L. 6, Docket No. 2. Moreover, the DHO record shows Hunter made a similar statement again during the hearing. Pet. Ex. D, at 2. But Hunter does not claim that statement was false.

*Toombs*, 773 F.2d at 997. Hunter does not claim, and nothing indicates to the contrary, that he or his case fall into that unique classification requiring counsel substitute. Thus, regardless of the reason why Hunter did not have a staff representative at the hearing, the lack of a representative did not violate his constitutional rights.

### C.    False statements in DHO report

Hunter further identifies two statements in the DHO report that he did not make: "I never possessed the phone" and "I'm not denying it, it is possible." Pet. Ex. D., at 2. The DHO acknowledges that Hunter did not make either of those statements, but rather they were inadvertently included in all three reports of the disciplinary hearings held on the same day involving possession of the same cellphone. DeLoia Decl. ¶¶ 20-21; Pet. Exs. E, F. However, Hunter does not allege that the inclusion of these seemingly clerical errors in the DHO record violates any right afforded to an inmate in a disciplinary hearing. Most logically, such an inclusion could be said to infringe upon an inmate's right to receive "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454. But even if this inaccurate attribution of the statements violated Hunter's right to a written statement by the factfinder, Hunter has not alleged that the error was prejudicial. *Adams*, 2011 WL 1793381, at *2. The inclusion of two clerically misattributed statements in the DHO report does not constitute a constitutional violation.

### D.    Sufficiency of the evidence

Finally, Hunter appears implicitly to challenge the sufficiency of the evidence against him. He contends the phone was "found off the grounds of the FPC," yet he was sanctioned for "possession of a cellphone in a correctional environment." Pet'r's Mem. of

L. 7, Docket No. 2. He also reiterates his contentions that several of the statements in the report were false. Although due process requires that there be "some evidence" supporting a disciplinary determination, it is a low hurdle to vault on constitutional review. *Hill*, 472 U.S. at 454. The standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *Id.* at 455-56. This does not require the court to weigh the evidence or asses witness credibility. *Id.* "Even when there is substantial evidence to the contrary [a hearing officer] may find a guard's report to be credible and therefore take disciplinary action." *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993).

Even taking Hunter's factual claims as true, the Court cannot conclude that no evidence supported the DHO's findings that resulted in Hunter's loss of good conduct time. At bottom, the forensic analysis of the cellphone showed calls to a phone number associated only with Hunter. This finding alone constitutes "some evidence" in the record that Hunter possessed the cellphone. Any other factual determination, including Hunter's credibility and the reliability of the investigative report lies within the discretion of the DHO and cannot be disturbed on habeas review.

## RECOMMENDAITON

For the reasons stated above, and based on all the files, records and proceedings herein, the Court RECOMMENDS THAT Petitioner's application for a write of habeas corpus [Docket No. 1] be DENIED and this action be DISMISSED WITH PREJUDICE.

Dated: May 15, 2019

s/David T. Schultz_____
DAVID T. SCHULTZ
United States Magistrate Judge

## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).